**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZACHERY ETKA,** | **:** | |
| **Petitioner** | **:** | **CIVIL ACTION NO. 3:17-0766** |
| **v** | **:** | |
| | | **(JUDGE MANNION)** |
| **BARRY SMITH** | **:** | |
| **Respondents** | **:** | |

**MEMORANDUM**

Zachery Etka, an inmate formerly confined in the State Correctional Institution, Houtzdale, Pennsylvania,[1] filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1, petition). He attacks a conviction imposed by the Court of Common Pleas for Bradford County, Pennsylvania. Id. For the reasons that follow, the Court will deny the petition.

**I.    Background**

The following background has been extracted from the Pennsylvania

---

[1]    Petitioner has been released from the Pennsylvania Department of Corrections, and currently resides at 9931Trebeck Road, N. Chesterfield, Virginia. See (Doc. 13).

Superior Court's January 10, 2017 Memorandum Opinion affirming the trial court's judgment. (Doc. 11-7 at 8-32, Commonwealth v. Etka, No. 1919 MDA 2015).

> Appellant, Zachary Chance Etka, appeals *pro se*[2] from the judgment of sentence entered in the Court of Common Pleas of Bradford County following his conviction by a jury on three counts of robbery, three counts of conspiracy, two counts of terroristic threats, and one count of receiving stolen property.[3] After a careful review, we affirm.
>
> Following Appellant's arrest in connection with the robbery of a bank, Appellant, who was represented by counsel, proceeded to a jury trial on November 20, 2014. The trial court has aptly summarized the testimony and evidence presented during the trial as follows:

---

[2]

Appellant was represented by court-appointed counsel throughout the proceedings in the trial court, including the filing of a counseled notice of appeal to this Court. However, thereafter, Appellant filed a motion in the trial court requesting permission to proceed *pro se* on appeal, and in response, counsel filed in this Court an application for remand for a *Grazier* hearing. Accordingly, by order filed on May 24, 2016, we remanded this matter for a hearing, and on July 11, 2016, the trial court filed an order indicating it held a *Grazier* hearing and determined Appellant has knowingly, intelligently, and voluntarily waived his right to counsel on appeal. Appellant subsequently filed in this Court a *pro se* brief, which we shall consider.

[3]

18 Pa.C.S.A. §§3701(a)(1)(vi), (ii), and (iv); 903; 2706(a)(1); and 3825, respectively.

On May 15, 2014[,] at approximately 1:00 p.m., [Appellant] and [his co-conspirator,] Chaz Talada parked in the parking lot in front of Citizens and Northern Bank located in East Smithfield, Bradford County, Pennsylvania. A bank teller on duty noticed the vehicle and [that] the individuals inside seemed to be looking around. [N.T. 11/20/14 at 20.] A male exited the vehicle wearing a white baseball cap, sunglasses, and a heavy winter coat, which [seemed] unusual [to the teller] because it was not cold that day. [*Id*.] The individual was carrying a backpack. [*Id*.] The individual entered the bank, approached a teller window, showed a hand gun, passed over the bag[,] and demanded money. [Id. at 22.] The teller placed the money from her drawer and the next teller ['s] drawer into the bag. [*Id*. at 23.] Included in the money was "bait money," [for] which the serial numbers ha[d] been recorded. [*Id*.] [The teller] handed the bag back to the individual[,] and he left the building. [*Id*. at 24.] The teller then hit the bank alarm and went to the window to get the license plate number of the vehicle, but there was no plate on the car. [*Id*.] The second teller identified the vehicle as a green Subaru with a black gas tank cover. [*Id*. at 28.]

New York State Trooper Mary Carsen, upon learning of the robbery over a radio transmission and the direction the vehicle was heading, drove to the town of Wellsburg, New York in hopes of locating the vehicle. She did locate a green Subaru[, which was] pulled up against the back of a minimart. [*Id*. at 36.] [Prior to Trooper Carsen's arrival upon the scene,] [Appellant] had entered the minimart and purchased a pack of cigarettes. This was shown on the video surveillance from the minimart. [Subsequently,] [a] Pennsylvania State Trooper [, Michael Adams,] [also] arrived at the scene[,] and [Appellant and Talada] exited their vehicle. [*Id*. at 37.]

[After frisking the two men for weapons, the troopers placed the men in separate vehicles. Trooper Adams questioned Talada and then, after reading him his Miranda rights, questioned

Appellant. *Id*. at 55–56.] [Trooper Adams] testified that [Appellant told him] the vehicle belonged [to him.] [*Id*. at 56.] [Appellant] said he did nothing wrong. [*Id*.] [Appellant] told [the] trooper that when [Talada] went into [the] bank, he couldn't drive away because he did not have a driver['s] license; that he didn't walk away because [Talada] was his friend; and that he did not attempt to call [the] police or anyone [else]. [*Id*.] [Appellant] did tell [the] trooper that he and [Talada] had planned the robbery earlier that day[,] and that upon arriving at the bank, he told [Talada] not to commit the robbery. [*Id*. at 62.]

[Pennsylvania State Corporal Douglas Smith testified that the vehicle was impounded and he searched it pursuant to a search warrant. *Id*. at 64.] [He] testified that a backpack was in the vehicle on the floorboard of the driver's side and the cash from the bank was inside [of] the backpack[. Id. at 65.] [The backpack also contained] a pistol pellet gun ... a jacket with a hood on it, ... and a white baseball cap. [Id. at 65–87.] The cash totaled $3,342.00 [, which] was the amount reported stolen. [Id. at 71, 76, 89.] Also in the vehicle were improvised smoking devices and marijuana. [Id. at 75.]

[Pennsylvania State Corporal Norman Strauss, III, testified that after Appellant's arrest he gave him his Miranda rights and transported him to the police station. *Id*. at 77–78.] [Appellant] [ ] told him that he thought about robbing the bank two days prior; it was his idea; he planted the seed in his friend's (Talada's) head; and he did a 30 second Google research on the topic of successful bank robberies. [*Id*. at 79, 83.] Further, [he told the corporal] that he waited in the vehicle while [Talada] entered [the] bank and then traveled to the minimart where they were picked up by [the] state police. [*Id*. at 80.] Also, there were times when [Appellant] [told the corporal that] the conversation about the robbery with [Talada] was a joke. [*Id*. at 83.] Finally, [ ] [Appellant] [told Corporal Strauss that he] wouldn't commit the robbery but [Talada] had his mind set on it.

Annetta Lewis testified that she was an employee of the minimart where [Appellant] was [apprehended]. When she left work [on] the day of the robbery, she noticed two men in a vehicle with cash in their hands. [*Id*. at 92.] The passenger was the only one she could see and he had a lot of cash in his hand. [*Id*. at 91–92.]

\*\*\*

[Pennsylvania State Trooper Nathan Lewis] testified that he [advised Appellant of his Miranda rights and] interviewed him at the police barracks. [*Id*. at 96–97.] [Appellant] indicated that he and [Talada] had been together for two days and had been using mind altering substances. [*Id*. at 97.] He told Trooper [Lewis] that they discussed a bank robbery and that the original plan was for him to go into the bank. [*Id*.] [Appellant] stated that they proceeded to the bank and along the way stopped to remove the license plate from a vehicle. [*Id*.] [Appellant indicated] they parked near the bank[,] discussed the robbery for approximately fifteen minutes[,] and [Appellant] tried to talk [Talada] out of the robbery. [*Id*. at 98.] They then drove to the bank. [Appellant stated] he then advised [Talada] that he did not want to go into the bank. [*Id*.] [Talada] entered [the] bank and came out[,] and they [then] fled [in the vehicle.] [*Id*.] [Appellant told the trooper] that while he and [Talada] were talking about [the robbery,] it was a joke. [*Id*. at 105.] Trooper Lewis also testified that he determined that [Appellant] did not have a valid driver ['s] license. [*Id*. at 109.]

[The] [d]efense presented the testimony of [Talada, who] admitted to the robbery of the bank.[4] He admitted that he drove

_____

4

Prior to Appellant's jury trial, Talada entered a guilty plea in connection with the

to the bank and he went into the bank wearing a coat, gloves[,] and sunglasses,[ which were] all his. [*Id*. at 115–16.] He also admitted that he was wearing a backpack that belonged to [Appellant, and it was Appellant's idea to use the backpack during the robbery. *Id*. at 116, 130.] [Talada testified Appellant] gave him the backpack when they went to the bank. [Id. at 130.] [He testified the] pellet gun was not loaded [but he] pointed the gun at the tellers. [*Id*. at 116.] [Talada testified that, prior to robbing the bank, he and Appellant sat in the car near the bank and talked about the robbery. *Id*. at 117.] [Appellant] told him he did not want to do it and suggested that he should do it. [*Id*.] They had conversations about robbing the bank [in the days leading up to the robbery, including] the day before[, at which time] they had been smoking marijuana. [*Id*. at 117–18.] He had also been taking Percocet and heroin. [After being apprehended, Talada] told the state troopers that he needed money for rent and to get his car repaired. [*Id*. at 124.] He testified that he [was] addicted to heroin and needed money to purchase more. [*Id*. at 123.] [Talada] testified that [Appellant] was too scared to commit the robbery and wanted [Talada] to do so. [Prior to the robbery, Appellant] took the license plate off the car. [*Id*. at 131.] [Talada testified that, when they left the house to commit the robbery, Appellant knew the robbery was going to happen. *Id*.] [At this time, Appellant] was wearing gloves ... and [a] jacket[.] [*Id*.] [After Appellant decided not to go into the bank, the men discussed Appellant getting a portion of the money. *Id*. at 132.] [Appellant] was going to use the money towards his business. [Talada] testified that [Appellant] did not tell him to not go in the bank. [*Id*. at 135.] [After the robbery, the men] began counting the money at the minimart[, and Talada gave Appellant a "handful."] [*Id*.] After [Talada] came out of [the] bank, he handed all the "stuff"—clothing, etc., to [Appellant] because he removed it as he was driving[,] and [Appellant] put

_____

robbery.

it in the back [, as well as] hid the gun. [*Id*. at 136.]

[Appellant] testified as follows: That he and [Talada] were watching a movie, smoking marijuana[,] and talking about the robbery hypothetically. [*Id*. at 145.] The day of the robbery, there were a lot of clothes and items in his car, so he did not notice anything out of the ordinary. [*Id*. at 149.] [He and Talada] drove around. Periodically, they would stop and [Talada] would get some marijuana out of the trunk of the car. [*Id*. at 150.] [Talada was driving Appellant's car on the day of the robbery. *Id*. at 149.] [Appellant testified that he] never knew [Talada] was going to rob the bank. [*Id.* at 151.] [When the men got close to the bank, Talada brought up robbing the bank[,] and [Appellant] [tried to] talk[ ] him out of it. [*Id*. at 152.] [Talada] agreed to go home, but he pulled into the bank[. *Id*.] [Talada] went into the bank and was out in twenty some seconds, so [Appellant] did not jump to conclusions. [*Id*. at 152–53.] [Talada] put [the] bag by his leg on [the] driver['s] side. Upon arriving at the minimart, [Talada had] money in his hand and that was the first time [Appellant] realized that [Talada] had robbed the bank. [*Id*. at 154.] [Appellant took] $5.00 from [Talada] and went inside the minimart to buy cigarettes. [*Id*.] If the police had not [arrived,] he would have called them. He was not aware that [the] license plate [had been] removed. [*Id*. at 157.]

The pellet gun was not processed for fingerprints or other trace evidence. [*Id*. at 88.] [T]here was no evidence from [Appellant's] cellphone regarding a Google search. [*Id*.]

Trial Court Opinion, filed 3/11/16, at 2–5 (footnote added).

At the conclusion of all evidence, the jury convicted Appellant of the offenses indicated *supra*, and he was sentenced to an aggregate of forty-six months to ninety-six months in jail. Appellant filed a timely, counseled post-sentence motion, which

was denied by operation of law on October 19, 2015. On October 29, 2015, counsel simultaneously filed on behalf of Appellant a notice of appeal and a Concise Statement pursuant to Pa.R.A.P. 1925(b). Thereafter, on March 11, 2016, the trial court entered its Pa.R.A.P. 1925(a) order.

Subsequently, as indicated *supra*, following a *Grazier* hearing, Appellant was granted permission to proceed *pro se* on appeal. Appellant filed a petition seeking permission to amend his Pa.R.A.P. 1925(b) statement, which had been filed by counsel, and this Court directed the trial court to rule on the motion. On August 22, 2016, the trial court granted Appellant permission to file an amended Pa.R.A.P. 1925(b) statement, and on August 31, 2016, Appellant filed an amended *pro se* Pa.R.A.P. 1925(b) statement. The trial court filed a supplemental opinion on September 21, 2016.

(Doc. 11-7 at 8-32, Commonwealth v. Etka, No. 1919 MDA 2015, Superior

Court Opinion). Etka raised the following issues on direct appeal:

1.  The Court erred in denying Appellant's motion for arrest of judgment based on insufficient evidence.

2.  The Court erred in denying the motion for a new trial based on the weight of the evidence claim.

3.  The Court erred in denying the motion for a new trial based on late disclosure of eyewitness.

4.  The Appellant alleges that the prosecutorial misconduct undertaken in bad faith intentionally prejudice and harass the Appellant denied the Appellant a fair trial.

5.  The Court erred in denying the motion for new trial or

dismissal of all charges based on the disqualification of district attorney motion.

6. The Court erred in denying the motion for dismissal of amended charges based on the amendment of information rule violation.

(Doc. 11-6, Appellant's Brief).

By Memorandum Opinion dated January 10, 2017, the Pennsylvania Superior Court affirmed the Petitioner's conviction. (Doc. 11-7 at 8-32, Commonwealth v. Etka, No. 1919 MDA 2015, Superior Court Opinion).

Etka filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was closed on April 21, 2017, for Petitioner's failure to perfect. Commonwealth v. Etka, 65 MT 2017.[5]

No collateral appeal was filed.

On May 2, 2017, Petitioner filed the instant petition for writ of habeas corpus in which he raises the following challenges to his conviction and sentence:

1. Insufficient Evidence - The evidence supporting the

_____

[5]

Petitioner states in his petition that he "abandoned any efforts to seek review in the PA Supreme Court when he realized he has already exhausted his remedies." (Doc. 1 at 2).

conviction is based on the knowing use of false testimony.

    2.   Disqualification of District Attorney for impropriety.

    3.  Prosecutorial Misconduct for allowing false testimony of witnesses.

(Doc. 1).

## II.    <u>Discussion</u>

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the

contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. §2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in §2254(e)(1) applies to factual issues, whereas the unreasonable application standard of §2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual

determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. §2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. §2254(d)(2) and (f)[6]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly

---

[6] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. §2254(f).

controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

### 1. Insufficient Evidence

Petitioner's first claim involves two aspects of evidence; initially that there was insufficient evidence to sustain his convictions, and secondly, that his conviction was against the weight of the evidence.  (Doc. 1).

With respect to the sufficiency of the evidence, Petitioner claims that that "Commonwealth had not presented sufficient evidence of specific intent, nor of an agreement or participation in the robbery" and that his "conviction was obtained on testimonies given by State Police that were known to the prosecution to be perjured." Id.

The Third Circuit Court of Appeals has held that the test for insufficiency of evidence is the same under both Pennsylvania and federal law. See Evans v. Court of Common Pleas, Delaware Cnty., Pennsylvania, 959 F.2d 1227, 1232-1233 and n. 6 (3d Cir. 1992).

Principles of due process dictate that a person can be convicted of a

crime only by proof of every element of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970); United States v. Ozcelik, 527 F.3d 88, 93 (3d Cir. 2008). In reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. (emphasis in original). Moreover, when the factual record supports conflicting inferences, the federal court must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the court must defer to that resolution. Id., 443 U.S. at 326. Reviewing federal district courts are to refer to the substantive elements of the criminal offense as defined by state law and must look to state law to determine what evidence is necessary to convict on the crime charged. Id., 443 U.S. at 324. For a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson 566 U.S. 650, 656 (2012).

14

"The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (internal quotation marks omitted). Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. Marshall v. Lonberger, 459 U.S. 422, 434 (1983).

Here, it is clear from the record that the trial court employed the Jackson standard in deciding the insufficiency issues raised in Petitioner's direct appeal:

In his first claim, Appellant contends the evidence was insufficient to sustain his convictions.[7] Specifically, Appellant contends that he could not be convicted of the crimes since the evidence proves Appellant was merely present in the vehicle while Talada committed the robbery. Appellant argues "there is no evidence supported by the record of an unlawful agreement, [ ] of Appellant's participation in the criminal act, [ ] of specific

_____

[7]

Intertwined within Appellant's sufficiency claim are various challenges to the credibility of testimony from various witnesses. Such challenges are more appropriately addressed as weight of the evidence claims, and thus, we shall address these claims with Appellant's additional weight of the evidence claims *infra*. Commonwealth v. Wilson, 825 A.2d 710, 713-14 (Pa. Super. 2003) (holding that review of the sufficiency of the evidence does not include an assessment of credibility of testimony; such a claim goes to the weight of the evidence).

intent that Appellant intended for [the robbery] to happen ... [or of] Appellant['s] participat[ion] in any of [Talada's] misdeeds." Appellant's Brief at 19–20.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weight the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

> Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the

prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Harden, 103 A.3d 107, 111 (Pa. Super. 2014) (quotation marks and quotations omitted).

Here, there is no dispute that Talada was the person who actually entered and robbed the bank at issue and that Appellant remained outside in the vehicle during the robbery. However, Appellant's guilt as to the crimes was premised upon conspiratorial liability.

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.[A.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

> "[M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as

the agreement is almost always proven through circumstantial evidence, such as by "the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

Commonwealth v. Murphy, 577 Pa. 275, 844 A.2d 1228, 1238 (2004) (citations and quotations omitted).

(Doc. 11-7 at 14-16). As the state court properly identified the applicable Supreme Court precedent, the federal habeas court must objectively evaluate whether the state court decision was an unreasonable application of Supreme Court precedent. The Court finds it was not.

The Commonwealth presented testimony from Petitioner's co-conspirator Talada, who testified that, for a few days prior to the robbery, he and Appellant discussed robbing a bank. He indicated that Appellant gave him the backpack to use during the robbery, and on the day of the robbery, they left the house with both men wearing jackets and gloves, despite the fact it was a warm day in May. Talada drove Appellant's vehicle, in which Appellant was a passenger. Talada testified that, prior to the robbery, Appellant removed the license plate from the vehicle and, as they arrived at the bank, Appellant

expressed fear, indicating he would remain in the vehicle. Talada further testified that, after the robbery, as the men drove away from the bank, Talada handed his clothing and the pellet gun to Appellant, who put the items in the back of the vehicle. Later that same day, the men began to split the stolen money while parked at a minimart, but they were interrupted when they were apprehended by the police.

Furthermore, three state troopers testified Appellant admitted to them that, in the days preceding the robbery, he and Talada had discussed robbing a bank. Trooper Strauss, who transported Appellant to the police station, specifically testified Appellant admitted that he thought about robbing the bank and had "planted the seed in Talada's head." (Doc. 11-7 at 17). Additionally, Trooper Lewis, who interviewed Appellant at the police station, testified Appellant admitted to him that the original plan involved Appellant entering the bank, along with Talada; however, just before the robbery, Appellant decided to wait in the car. Id.

Taking into consideration all of this evidence as a whole, and viewing the evidence in the light most favorable to the prosecution, the Court finds that the state court's conclusion that there was sufficient evidence at trial to establish the necessary elements for conspiracy under Section 903, is not

objectively unreasonable.

To the extent that Petitioner argues, in both Claim One and Claim Three, that "the evidence supporting the conviction is based on the knowing use of false testimony"; specifically that "during their testimony, Police referred to interviews they had with the Petitioner, where they allege the Petitioner confessed to them certain statements that insinuated his guilt" and that "what they testified to never took place" and that "the prosecution knew the testimony was false and allowed it to go uncontested as it appeared", that the verdict was against the weight of the evidence, such a contention is distinguishable from a claim that the evidence was insufficient to support the verdict.

A federal habeas court has no power to grant habeas relief because it finds that the state conviction is against the weight of the evidence. Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985). A sufficiency of evidence claim requires an inquiry into whether, upon the evidence presented in a state criminal proceeding, a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 319. A weight of the evidence claim, however, concerns a determination by the fact finder that certain evidence was more credible than other evidence.

In <u>Marshall v. Lonberger</u>, Justice Marshall specifically stated, "<u>Title 28 U.S.C. §2254(d)</u> gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." <u>Marshall v. Lonberger, 459 U.S. at 434</u>. Accordingly, Petitioner's Claims One and Three are not cognizable for federal habeas corpus review.

### 2. **Trial Court Error**

In his second claim, Petitioner alleges the trial court erred in denying his pre-trial motion *in limine* seeking to disqualify the district attorney, Daniel J. Barrett, Esquire, from prosecuting this case. Petitioner claims disqualification was necessary under the Rules of Professional Conduct, Rule 1.7, since the district attorney and Talada's counsel, Patrick Barrett, are brothers. Etka additionally suggests disqualification was necessary since the district attorney had a conflict of interest in that he utilized Talada to present false testimony against Petitioner so that the district attorney could convict Petitioner, and in return, the district attorney gave his brother's client (Talada) favorable treatment.

The Pennsylvania Superior Court addressed this claim as follows:

> We note that "[w]e review the trial court's decisions on disqualification and conflict of interest for an abuse of

discretion." [Commonwealth v. Sims, 799 A.2d 853, 856 (Pa.Super. 2002)](.).

In his pre-trial motion, Appellant sought disqualification of the district attorney under Pennsylvania Rule of Professional Conduct 1.7, which provides the following:

> Rule 1.7. Conflict of Interest: Current Clients
>
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent.

Pa. R. Prof. Conduct, Rule 1.7.

In the case *sub judice*, we conclude the district attorney was not required to be disqualified under Rule 1.7. By its plain terms, Rule 1.7 relates to a client's interest as it relates to his attorney. Appellant is not the client of either Daniel J. or Patrick Barrett. Simply put, Appellant has not explained how Rule 1.7 is applicable to his circumstance.

Furthermore, we find meritless Appellant's suggestion the district attorney had a conflict of interest in that he utilized Talada to present false testimony against Appellant so that the district attorney could convict Appellant, and in return, the district attorney gave his brother's client (Talada) favorable treatment. The record reveals that Appellant, and not the district attorney, called Talada as a witness during trial. Moreover, aside from vague, bald assertions, Appellant has not explained what false testimony was suborned by the district attorney. Accordingly, the trial court did not abuse its discretion in denying Appellant's pre-trial motion seeking disqualification of the district attorney. See Sims, *supra*.

This Court on federal habeas review has no adjudicatory power over the state courts' determination that, as a matter of state law, the trial court did not abuse its discretion in denying the motion *in limine*. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."); Lewis v. Fisher, No. 11-5035, 2013 WL 2334540, at *9 (E.D. Pa. May 28, 2013) ("A trial court's abuse of discretion is a question of state law and not a federal constitutional claim."). Accordingly, because Ground Two asserts only a

violation of state rules, Petitioner has not alleged a cognizable claim for federal habeas relief.

## III.    **Certificate of Appealability**

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the

procedural disposition of this case debatable. Accordingly, no COA will issue.

A separate Order will be issued.

## IV.    Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be

**DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: December 2, 2019**

17-0766-01